CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 26, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAVON ARRINGTON,<br>    Plaintiff,<br><br>v.<br><br>SGT. A. MULLINS, *et al.*,<br>    Defendants. | Civil Action No. 7:22-cv-00743<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Javon Arrington, a Virginia inmate proceeding *pro se*, alleges in this action that defendant Mullins, a sergeant at Red Onion State Prison (ROSP), violated his constitutional rights when conducting a strip-search. (Compl., Dkt. No. 1.) ROSP is also named as a defendant. Both defendants move for summary judgment. (Dkt. No. 21.) Arrington responded to the motion. (Dkt. Nos. 25, 26.) Defendants' motion will be granted.

I.  BACKGROUND

**A.  Plaintiff's Allegations**

In a verified complaint, Arrington alleges that on September 22, 2022, between approximately 1:00 a.m. and 2:30 a.m., Sgt. Mullins and other officers removed Arrington from his cell and placed him on his knees. Arrington was fully restrained in handcuffs and shackles. Sgt. Mullins ordered the other officers to strip plaintiff of his clothing, "which led to my butt being touch[ed] and my butthole as they took my shorts off and pulled my draws down in the process." (Compl. at 4.) Plaintiff "felt extremely violated and immediately after they pulled my underwear up they begin bending my fingers to torture me and stepping on my toes." (*Id.*) According to Arrington, the entire pod witnessed the event. He "felt raped of my pride and I feared my life." (*Id.*) Arrington claims that he was denied access to the process used under the

Prison Rape Elimination Act (PREA). He also alleges that staff at ROSP retaliated against him for submitting grievances by refusing to send him copies of his inmate trust statements. (*Id.*)

**B. Facts in Support of Defendants' Motion**

In support of their motion, defendants provided an affidavit by E. Shirks, an Intelligence Officer at ROSP (Ex. 1, Dkt. No. 21-1), and two affidavits by Sgt. Mullins (Ex. 2, Dkt. No. 22-2 (Mullins 3/11/24 Aff.), (Ex. 3, Dkt. No. 22-3) (Mullins 4/25/23 Aff.)), along with surveillance video footage (Ex. 4, Dkt. No. 21-4), handheld video footage (Ex. 5, Dkt. No. 21-5), and body cam video footage (Ex. 6, Dkt. No. 21-6) from September 22, 2022.

On the date in question, Arrington intentionally flooded his cell in the middle of the night by stuffing a shirt inside his toilet. (Mullins 4/25/23 Aff. ¶ 4.) As a result, he was removed from his cell and searched according to VDOC policy. (*Id.*) Plaintiff's clothes were removed during that search, but not his underwear. (*Id.*; Exs. 4–6.)

Sgt. Mullins denies touching Arrington under his underwear or engaging in any other form of inappropriate contact or touching. (Mullins 3/11/24 Aff. ¶ 4.) "No other officers touched inmate Arrington inappropriately, either." (*Id.*) The officers were holding onto Arrington's fingers as a control measure while he was in handcuffs, but Mullins did not bend Arrington's fingers back, nor did any other staff members. (*Id.*) No officers stepped on Arrington's toes during the incident either, including Sgt. Mullins. (*Id.*)

On September 23, 2022, VDOC received a message through the PREA hotline alleging that Arrington had been sexually assaulted by staff. (Shirks Aff. ¶ 4.) The next day, plaintiff was interviewed by investigators. Arrington stated that he "had not been sexually assaulted but did feel staff acted inappropriately [by] removing [his] clothing in the pod." (*Id.* ¶ 5.) A few days later, Arrington filed an informal complaint alleging that he was sexually assaulted by a

2

gang of officers. Officer Shirks responded by advising plaintiff that an investigation would be conducted. (*Id.* ¶ 6, Encl. A.)

Officer Shirks, along with another member of the intelligence department, interviewed plaintiff. Arrington was asked why he filed a written complaint stating that he had been sexually assaulted after telling other staff that he had not been sexually assaulted. Arrington said that he "didn't know the staff's intentions when removing his clothes in the middle of the pod." (Shirks Aff. ¶ 7.) A few days later, plaintiff filed another informal complaint that again alleged "sexual assault by staff." (*Id.* ¶ 8.) Officer Shirks reviewed the corresponding pod camera footage, which showed that plaintiff's underwear remained on the entire time and showed that no staff touched Arrington inappropriately throughout the time he was kneeling. (*Id.* ¶ 9.)

As a result of the investigation, Officer Shirks charged plaintiff with making a false statement or charge against an employee. (*Id.* ¶ 10, Encl. C.) Sgt. Mullins "played no role in the decision to implement or pursue this charge against Arrington." (*Id.* ¶ 11; Mullins 3/11/24 Aff. ¶ 5.) Arrington accepted a penalty offer as to this charge. (Shirks Aff. ¶ 10, Encl. C.) Furthermore, Mullins states that he has "no knowledge of any requests for copies of an inmate trust statement" as he plays "no role in that process." (Mullins 3/11/24 Aff. ¶ 6.)

The videos show that officers responded to the cell block and began mopping the floors due to the flooding from Arrington's cell. Arrington was placed in restraints, removed from his cell, and searched. He was on his knees while the officers searched him, and he was leaning forward with one officer holding each arm and hand behind Arrington's back as the search was conducted. The entire search lasted just over ten minutes before officers returned Arrington to his cell. (*See* Surveillance Video 1:23-25-1:34:00, Dkt. No. 21-4.)

3

**C. Plaintiff's Response to Motion for Summary Judgment**

Arrington has filed two affidavits in response to the summary judgment motion. In the first affidavit, he states that he is "seeking a trial date in this matter" and is "ready to proceed to trial." (Dkt. No. 25.) He further states that he "did not receive any responses to my affidavits filed against Mullins . . ." (*Id.*) The court does not know to which affidavits Arrington refers. Arrington also states that he has responded to all affidavits given by the defendant. In this affidavit, Arrington notes that the mail processing system for his facility limits his time to comply with court deadlines, but he does not and has not sought time to file an additional response.

In his second affidavit, Arrington reiterates his desire for a jury trial. "But to answer the summary judgment and motion to dismiss. I have asked for a jury trial already so that the judgment will be determined by both sides presenting the facts in front of the public. Then a judgment could be made. I do not wish to argue by paper." (Dkt. No. 26.)

II. ANALYSIS

**A. Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment.  *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

## B. Defendants' Motion

### 1. Excessive force

The court construes Arrington's assault claim against Sgt. Mullins as an Eighth Amendment excessive force claim.  As a sentenced prisoner, the Eighth Amendment's ban on cruel and unusual punishment applies to plaintiff's claim of excessive force.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).

An inmate's Eighth Amendment excessive force claim "involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). The objective component measures the nature of the force employed, asking whether the force "was sufficiently serious to establish a cause of action." *Brooks*, 924 F.3d at 112. This is not a high bar; *de minimis* or trivial force is not enough, but anything more will suffice. *Id.* Significant physical injury is not required. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

The more demanding part of the test is the subjective component, which asks whether the officer acted with a "sufficiently culpable state of mind." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The required state of mind is "wantonness in the infliction of pain." *Pennington v. Mercer Cnty. Comm'n*, CIVIL ACTION NO. 1:21-00335, 2023 WL 3607267, at *7 (S.D.W. Va. May 23, 2023) (citing *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)). Whether an inmate can meet this standard turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320. Officers act in good faith when they are motivated by an "immediate risk to physical safety" or threat to prison order. *Brooks*, 924 F.3d at 113. But they cross the line into an impermissible motive when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct. *Id.*

On summary judgment, the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and "for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21. Four factors can be used to "infer the existence of the subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116. Those factors are: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used,

6

(3) the extent of any reasonably perceived threat that the application of force was intended to quell, and (4) any efforts made to temper the severity of a forceful response. *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). If a reasonable jury could find, based on inferences drawn under the *Whitley* factors or other evidence, that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate. *Brooks*, 924 F.3d at 116.

Arrington does not allege that Sgt. Mullins touched him in an inappropriate manner during the strip search described in the complaint. The videos show that the other officers were restraining and searching plaintiff at the direction of Mullins, although Mullins does appear to touch Arrington at various points during the search. At the summary judgment stage, plaintiff must show defendant's personal involvement for liability to attach under § 1983. *Williamson v. Stirling*, 912 F.3d 154, 171–72 (4th Cir. 2018) (noting that a plaintiff must affirmatively show that the official acted personally in violating plaintiff's constitutional rights). Assuming, without deciding, that Arrington could establish Mullins's personal involvement, there is no evidence that the search was conducted with malice or for the purpose of causing harm. Instead, the search was done pursuant to VDOC policy after plaintiff had flooded his jail cell. The application of some force was therefore necessary to ensure that plaintiff did not present a further security threat to the cell block. Accordingly, there is no evidence that the subjective element was satisfied. The application of force was made in a good faith effort to maintain or restore discipline. *See, e.g.*, *Payne v. Thomas*, CIVIL NO. JKB-18-3418, 2020 WL 886600, at *5 (D. Md. Feb. 24, 2020) (finding that "[e]ven if the Defendants here used a nontrivial amount of force, . . . the uncontroverted evidence shows that the strip search was conducted pursuant to a policy which required prisoners to undergo strip searches before leaving the prison").

Moreover, while Arrington alleges that he was "raped of his pride and feared my life," Compl. 4), plaintiff does not allege to have suffered any physical harm or injury. Strip searches

7

of prisoners that involve touching but no physical harm have been found to be constitutional. *See Morales v. Paynter*, No. 5:12-CT-3167-F, 2014 WL 1057010, at *4 (E.D.N.C. Mar. 18, 2014) (collecting cases); *Gallagher v. Codfeller*, No. 2:11cv181, 2012 WL 5361005, at *4 (E.D. Va. Oct. 31, 2012) ("Plaintiff suffered no physical injury from the touching of his anus. Plaintiff felt emotional distress and humiliation, and the incident brought back thoughts of a prior sexual assault. However, such injury does not rise to the level of a constitutional assault."). The court reviewed the video evidence submitted by defendant and is unable to conclude for certain that Arrington's buttocks were not touched because the view is obscured at various points by officers standing in the line of sight. However, even if Arrington was touched, either purposefully or incidentally, this would not be enough to state a valid Fourth Amendment claim.

As the court has noted, Arrington did not respond with any admissible evidence to controvert the evidence provided by the defendants, relying only on his desire to go to trial and to not "argue by paper." However, Arrington has the burden to come forth with evidence sufficient to create an issue of fact for trial. Plaintiff's complaint was a verified complaint, but even so, his version of events, where he describes officers touching his buttocks, stepping on his toes, and bending back his fingers "to torture me" is largely disproved by the video surveillance evidence provided by the defendants. As noted, the court cannot definitively conclude that officers did not touch plaintiff's buttocks because of various officers obscuring the line of sight of the cameras. For the same reasons, the court also cannot definitively conclude that Arrington's toes were not stepped on or that his fingers were not bent in some manner.[1] However, the court's review of the videos illustrates that the officers, under the direction of Mullins, conducted a routine strip search that was largely without incident. The officers did not act maliciously and sadistically in an attempt to harm Arrington while the search was conducted.

---

[1] At various points of the video evidence, officers are shown holding Arrington's fingers, but his fingers are not being bent or pulled. (*See* Handheld Video at 4:30, Dkt. No. 21-5.)

Accordingly, Mullins is entitled to summary judgment on Arrington's claim. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (awarding summary judgment where an inmate's allegations and supporting affidavits were contradicted by the video recordings of the incidents).

Ultimately, the court agrees with the characterization put forward by Sgt. Mullins that the videos show a calm interaction between plaintiff and the officers as the search was conducted. The audio reflects that Arrington was upset about the situation, but the episode was not violent, combative, or confrontational. The videos illustrate to the court that the search was not conducted with malice and for the purpose of causing harm. *See Ozmint*, 578 F.3d at 254 ("We have reviewed the video recordings of both incidents and conclude that no reasonable jury could find that correctional officers . . . applied force 'maliciously and sadistically for the very purpose of causing harm.'") (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).For these reasons, the court will grant summary judgment to Sgt. Mullins on plaintiff's excessive force claim.

### 2. Retaliation

To succeed on a First Amendment retaliation claim, plaintiff must establish (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020). To establish a causal link, plaintiff must show that the defendant had knowledge of the plaintiff's protected conduct, and there was a temporal proximity between the protected conduct and the adverse action. *See Booker v. Merchant*, Case No. 2:22-cv-02179-DCC-MGB, 2023 WL 4239186, at *5 (D.S.C. Mar. 30, 2023) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

Sgt. Mullins was not involved in any of the alleged retaliatory conduct because he does not have a role in the process under which prisoners request copies of their trust statements. Arrington has not established a causal connection between his protected activity and any actions taken by Mullins. Thus, the court will grant summary judgment as to this claim.

### 3. Red Onion State Prison

Arrington has also sued Red Onion State Prison. However, Red Onion State Prison is not a "person" subject to suit under Section 1983. *See Williams v. Gilbert*, Civil Action No. 7:22cv00671, 2023 WL 4686456, at *2 (W.D. Va. July 21, 2023). Therefore, the court will grant summary judgment to this defendant.

### III. CONCLUSION

For the reasons stated in this opinion, the court will grant defendants' motion for summary judgment in an appropriate order.

Entered: March 26, 2025

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge